# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:06CR266

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Vs. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| DONALD STEVEN CAGLE. ) | |
| _____ ) | |

**THIS MATTER** is before the court in accordance with 28, United States Code, Section 636(b) and on defendant's Motion to Suppress (#23). An evidentiary hearing was conducted before the undersigned on February 28, 2007, where oral arguments were also heard. Defendant did not testify.

The issues having been fully briefed and ably argued by respective counsel, the Motion to Suppress is now ripe for entry of the following findings,[1] conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

**I.  Background**

At the hearing, Special Agent Harold Young, Jr., United States Forest Service,

---

[1] The findings of fact herein made are intended only to aid the decision making process and expedite further review. Such findings are not intended to be binding as to ultimate issues left to the finder of fact at trial and are made in accordance with Rule 12(d), Fed.R.Crim.P.

1

testified and certain portions of reports and photographs prepared by Agent Young were accepted into evidence. Agent Young testified that on the afternoon of July 27, 2006, he was working in his office in the Pisgah National Forest when a report from forest volunteers came in that they had received complaints from forest visitors that a man was obstructing traffic on U.S. Highway 276, a two lane road running through the National Forest immediately in front of the Pisgah District Ranger Station. Inasmuch as uniformed officers were not available, Agent Young testified that he responded to the complaint.

Dressed in casual clothes, Agent Young traveled to the nearby scene in his unmarked police vehicle. Upon seeing defendant staggering down the road, Agent Young parked his vehicle near defendant and activated his blue lights in an attempt to slow down traffic. Agent Young testified that Highway 276 was busy that day with summer visitors to the National Forest.

When he encountered defendant, Agent Young testified that he advised defendant that he was a law enforcement officer. Agent Young testified that he noticed the odor of alcohol about defendant's person. Agent Young then asked defendant for identification, but having none on him, defendant provided his name, home address, birth date, and Social Security number to Agent Young, all from memory. Agent Young then asked defendant where he was headed, and defendant

answered he was walking into town to a store and advised that he was homeless and staying at a campsite on Averys Creek, a location approximately two miles from where defendant was found.

Agent Young testified that he then made an inquiry by radio to determine the legal status of the defendant by using the defendant's name and birth date and determined that there were no warrants for him. Agent Young testified that although he had no reason to arrest defendant, he was concerned for defendant's personal safety if he continued to walk to town on U.S. 276. Agent Young then advised defendant that it was his impression that he was intoxicated and that it would be dangerous to continue walking down the highway in his present condition. Advising defendant that he was not under arrest, Agent Young asked defendant whether he would acccept a ride back to his campsite; defendant agreed, and Agent Young advised him that he would need to pat him down for weapons before he could drive him back to his campsite. Agent Young then asked defendant for consent to search his backpack for officer safety. Defendant agreed, Agent Young searched the backpack and the defendant and finding no weapons returned the backpack to defendant. Agent Young then drove defendant back to his campsite, insuring that he wore his seat belt.

Agent Young testified that while he knew that campsites existed on Averys

Creek, he did not know precisely where defendant was camped, and that defendant was able to tell him which campsite number he was staying at and direct him to his campsite as they traveled back in Agent Young's vehicle.

Upon reaching defendant's campsite, Agent Young asked defendant whether he had any weapons in his camp, and defendant said no. Agent Young noticed, however, that the tent was of a quality that he did not expect to see owned for possessed by a homeless person.. His suspicions aroused, Agent Young took two pictures of defendant at his campsite before leaving.

Agent Young then traveled the two miles back to his office. Soon after he returned to his office, Agent Young testified that he received a report from another camper, Joshua Greene, that his campsite on Averys Creek had been broken into, a Remington .22 Caliber Riffle had been stolen, and that he had seen a person who Agent Young believed fit defendant's description in the vicinity.

With this information, Agent Young testified that he got back in his unmarked vehicle and returned to defendant's campsite. Upon arrival at defendant's campsite, Agent Young observed defendant sitting in a folding chair. No alcohol was visible in the campsite, and Agent Young testified that upon his arrival defendant got up and met him half way between the tent and the agent's vehicle. Observing that the previously open tent had been zipped shut and that the zippers had been "locked"

4

with twisted wires, Agent Young asked defendant whether he would consent to a search of his tent. Defendant asked "why," and Agent Young advised defendant that he had returned based on reports of thefts by other campers along Averys Creek. Agent Young then stated that he was asking for his consent to search so that he could expedite and clear up the matter. Young explained to the defendant that he did not have to consent to the search. Agent Young then testified that defendant said "go ahead and take a look." Agent Young then asked defendant to undo the wires and open the tent, which required defendant to bend down to the ground and untwist the wires. Agent Young testified that he was surprised that defendant was able to accomplish such task without falling over. Agent Young testified that defendant again stated that he had no weapons in his campsite. Upon a search of the tent, the stolen riffle was discovered as well as other items which were reported stolen by other campers.

    Agent Young testified that upon discovery of the rifle, defendant apologized for lying to him about the presence of a weapon, and said that he had bought it a couple of days earlier from a person whose last name he could not remember. Due to a discrepancy in the victim's description of the weapon, defendant was not immediately arrested but was instead issued a receipt for the weapon. A later check of the weapon's serial number revealed that it belonged to the victim and not

defendant.

## II. Discussion

Defendant seeks suppression of any and all evidence discovered pursuant to the search of his tent on July 27, 2006. Defendant argues that his consent was not voluntary due to his state of intoxication.

Review of published decisions reveals that a person has a reasonable expectation of privacy in a tent used for habitation that is closed on all sides, even if that tent is pitched in a public campground. United States v. Gooch, 6 F.3d 673, 678 (9th Cir. 1993). The Court of Appeals for the Fourth Circuit held in Gooch as follows:

> A guest in Yellowstone Lodge, a hotel on government park land, would have no less reasonable an expectation of privacy in his hotel room than a guest in a private hotel, and the same logic would extend to a campsite where the opportunity is extended to spend the night.

Id. Other courts have also looked to whether a tent is being used as a dwelling to determine whether a defendant had a privacy interest in a tent. United States v. Rigsby, 943 F.2d 631 (6th Cir.1991), cert. denied, 503 U.S. 908 (1992); People v. Livermore, 9 Mich.App. 47, 155 N.W.2d 711, 714 (1967). Law enforcement may conduct a search of a dwelling, which would include a closed tent used as a dwelling, without a warrant and without probable cause if the suspect voluntarily consents to

6

the search. United States v. Matlock, 415 U.S. 164, 171 (1974); Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). Where a search is conducted based on consent rather than a warrant, the burden is on the government to show by a preponderance of the evidence that, under the totality of the circumstances, the defendant voluntarily consented to the search that resulted in discovery of evidence defendant wishes to exclude. Id.

The appropriate inquiry fo determining whether consent was voluntary was recently discussed by the Eastern District of Virginia in United States v. Tyson, 360 F.Supp.2d 798 (E.D.Va. 2005), which held as follows:

> In determining whether a defendant's consent was voluntary, the critical inquiry is whether a defendant's consent to search was his own "essentially free and unconstrained choice" or whether his will was "overborne and his capacity for self-determination critically impaired." *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (*quoting Schneckloth*, 412 U.S. at 219, 93 S.Ct. 2041). This inquiry is based on an examination of the totality of the circumstances. *See Schneckloth*, 412 U.S. at 223-34, 93 S.Ct. 2041; *Boone*, 245 F.3d at 361; *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir.1996). In assessing the totality of the circumstances, appropriate factors to consider include the characteristics of the accused (such as his age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the officer's conduct, the number of officers present, and the duration of the encounter). *Lattimore*, 87 F.3d at 650. While it is a relevant factor in the voluntariness inquiry that the defendant knew of his right to refuse consent, the government need not establish that the defendant knew of his right to refuse to prove that consent was voluntary. *Boone*, 245 F.3d at 362; *United States v. Brugal*, 209 F.3d 353, 362 (4th Cir.2000).

> Additionally, consent given while in custody may still be voluntary so long as the totality of the circumstances confirms that the consent was not coerced. *Boone*, 245 F.3d at 362-63 (*citing Watson*, 423 U.S. at 424, 96 S.Ct. 820).

Id., at 805.

In considering all of the evidence presented, the was no evidence that Agent Young used any improper or overbearing tactics. Instead, it appeared from the testimony that Agent Young's approach of defendant was as non-confrontational as imaginable. As to the conduct of the officer, the undersigned finds that little pressure was exerted on defendant in obtaining the consent to search inasmuch as only minutes elapsed between when Agent Young arrived and when he obtained consent. There was no evidence at the hearing that defendant's free will had been overcome through anything possibly attributable to Agent Young.

Turning to defendant's central argument, the undersigned has considered whether defendant's intoxication was so great as to prevent him from exercising his freewill. In doing so, the undersigned has considered the characteristics of the accused including his age, maturity, education, intelligence, and experience. No testimony was presented by defendant on these issues, and the court has attempted to discern these characteristics through the agent's testimony. It appears to the court that at the time of these encounters, defendant was an adult who was homeless.

8

Agent Young's testimony indicated that defendant was not lacking in maturity, education, or intelligence; indeed, the testimony revealed that, despite being intoxicated, defendant was able to understand Agent Young's questions and requests, provided accurate personal information from memory, and was capable of making decisions in own best interest. The court specifically notes that the defendant agreed with the agent that walking down the highway while intoxicated was not in his best interest, and agreed that he would be better off being driven back to his campsite, which the court finds to be indicia of intact self-determination. While defendant argued that a negative inference as to capacity to consent should be drawn from the fact that defendant's intoxication required Agent Young to drive him back to his campsite, the court finds that a different inference is supported by all the evidence, which is that defendant's level of intoxication did not sufficiently concern Agent Young to cause him to seek medical assistance for defendant or seek any sort of involuntary treatment or detention.

Other evidence that the court has considered includes the photographs of defendant at the time of his encounter with law enforcement. From a review of the photographs placed into evidence, the court concludes that despite being homeless, defendant had set up an orderly campsite, that no alcohol was visible in the pictures, and that defendant had taken thoughtful measures to protect his tent from the

9

elements, including suspending a tarp above his tent. Further, the photographs of defendant taken by Agent Young indicate that defendant was not disheveled.

Where a defendant could stand and walk on his own, and appeared to be oriented to his surroundings, the Court of Appeals for the Fourth Circuit determined that the district court properly found that defendant's consent was voluntary despite his intoxication even with a blood alcohol content of .24 based on a totality of the circumstances. United States v. Ball, 2001 WL 324624, 2 (4th Cir. 2001). Factors which other courts have considered in the context of intoxication's impact on a person's ability to voluntarily consent include determining whether defendant was aware of what he was doing or failed to appreciate significance of his actions, United States v. Scheets, 188 F.3d 829, 839-40 (7th Cir.1999), cert. denied, 528 U.S. 1096 (2000) (cited with approval in Ball, supra), and finding consent voluntary even though defendant was intoxicated, staggered, swayed, and slurred his speech. United States v. Gay, 774 F.2d 368, 376-77 (10th Cir.1985) (cited with approval in Ball, supra).

In this case, defendant herein was not unlike the defendant in Ball. The uncontradicted evidence presented indicated that although he was intoxicated, defendant was capable of walking (albeit with a stager), standing, stooping down without falling, dexterous use of fingers and hands in untwisting wires, spacial orientation as to where his campsite was located within a National Forest despite

being two miles from it, to communicate detailed personal information, and an ability to make other decisions which were in defendant's best interest.

Based on the totality of the circumstances, Schneckloth v. Bustamonte, supra, the court finds that defendant's capacity for self-determination and to give knowing and voluntary consent to a search was not critically impaired on July 27, 2006, and that he did voluntarily consent to the search of his tent by Agent Young. The undersigned will respectfully recommend that defendant's Motion to Suppress be denied.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** the defendant's Motion to Suppress (#23) be **DENIED** for the reasons discussed above.

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within fouteen (14) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file

objections to this Memorandum with the district court constitutes a waiver of the right to <u>de novo</u> review by the district court, <u>Snyder</u>, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

Signed: March 1, 2007

Dennis L. Howell
United States Magistrate Judge